MARY G. NORTON v. ROY HINDSLEY

5-4658                                        435 S.W. 2d 788

Substituted Opinion on Rehearing January 13, 1969
[Original opinion delivered October 7, 1968, p. 299.]

*David Solomon* and *W. G. Dinning, Jr.* for appellant.

*John L. Anderson* for appellee.

JOHN A. FOGLEMAN, Justice.    On rehearing, the opinions delivered in this case on October 7, 1968, are withdrawn, and the following opinion is substituted therefor:

968

The first question to be determined on this appeal is whether the actions of Roy Hindsley, appellee here, were sufficient to take an oral lease out of the statute of frauds. We find that they were not.

Hindsley had been a tenant on farm lands owned by appellant Mary G. Norton for a number of years prior to January 1, 1967. On February 13, 1967, appellant filed an action in unlawful detainer against Hindsley, who filed a cross bond to retain possession. His answer contained allegations that on or about the first day of November 1966, he "made a *binding* agreement for the rental of such lands with the plaintiff [appellant] and that plaintiff accepted his rent notes in the amount of $15,000 representing the rentals to be due upon such lands for the period 1967, 1968, and 1969." (Emphasis ours.) Appellee also alleged that proper notice of termination had not been given him, even if a new agreement had not been made.

Mrs. Norton is nearly 80 years of age. She testified that she told Hindsley and his wife when they called upon her in late October 1966, that she was going to have to get the best rent she could for 1966 and that Hindsley should go to her son, whom she had authorized to act, about renting the land. According to her, Mrs. Hindsley returned and gave her a piece of paper, saying it was "the rent note." Mrs. Norton stated that she was in bed, did not have her glasses, and did not even look at the paper, but reminded Mrs. Hindsley that she had told Hindsley to go to her son. Mrs. Norton did not know what she had done with the paper Mrs. Hindsley handed to her. She admitted having told Hindsley he could rent the land at her price.

Mrs. Norton's son, Earl, testified that he negotiated the agreements with Hindsley for the renting of the lands for many years and specifically for the years 1964, 1965, and 1966. He stated that after Hindsley's visit to Mrs. Norton, he took two notes he found on his

mother's dresser and told Hindsley that he could not have the farm for $5,000 per year but that the rent would be $7,000. He further stated that Hindsley agreed, whereupon he took a note in that amount to Hindsley, who refused to sign it, saying that he would not pay that much rent.

There was evidence indicating that appellee was given written notice by appellant's attorney that his right to possession would terminate December 31, 1966, and that appellant was insisting upon possession at that time. This was done by letter dated November 10, 1966.

Hindsley testified that on the occasion of his visit to Mrs. Norton, she told him to prepare the rent notes for 1967, 1968, and 1969, saying that her son wanted to rent the land to some of his friends. According to him, the notes were prepared by one Davidson and taken by Mrs. Hindsley for delivery to Mrs. Norton. He denied having previously dealt with Earl Norton but admitted that Earl Norton had talked to him about the farm rental. He claimed that he caused the "diverted acres" on the land to be plowed, thinking he had rented it for three years.

Mrs. Hindsley corroborated her husband's testimony about their visit to Mrs. Norton. She testified that she took rent notes for $5,000 each for 1967, 1968, and 1969 to Mrs. Norton, who stuck them under a towel spread across her lap, saying "all right."

Mrs. Earl Norton testified that she typed the rent notes for 1964, 1965, and 1966. Mrs. Hindsley stated that Mr. Davidson had not previously prepared rent notes for the parties.

Our statute of frauds requires that a contract for lease of lands for a term longer than one year be in writing signed by or on behalf of the party to be bound. Ark. Stat. Ann. §38-101 (Repl. 1962). No such writ-

ing was offered in evidence. Unless the acceptance of the notes signed by appellee by appellant, or appellee's action in plowing some of the acreage involved, took the transaction outside the application of the statute of frauds, appellee could not be entitled to judgment.

Under our decisions, it is clearly established that the mere breaking of ground is not such a valuable and permanent improvement as to take the case out of the statute of frauds. *French* v. *Castleberry,* 238 Ark. 1038, 386 S.W. 2d 482; *Ashcraft* v. *Tucker,* 136 Ark. 447, 206 S.W. 896; *Garner* v. *Starling,* 137 Ark. 464, 208 S.W. 593. Furthermore, part performance as a defense is available in equity only, and cannot take any case at law out of the statute of frauds. Therefore, it cannot be a defense in an action in unlawful detainer, at least where there was no effort to transfer the cause to an equity court. *Ozan Lumber Co.* v. *Price,* 219 Ark. 709, 244 S. W. 2d 486; *Henry & Bros.* v. *Wells,* 48 Ark. 485, 3 S.W. 637; *Mitchell* v. *Hanley,* 171 Ark. 456, 284 S.W. 535.

Mrs. Norton's mere acceptance and retention of the notes signed by Hindsley will not suffice to take the oral contract out of the statute of frauds. *Bromley* v. *Aday,* 70 Ark. 351, 68 S.W. 32. Even the advance payment of rent under a parol contract for a lease for more than one year cannot extend the tenancy beyond one year. *Brockway* v. *Thomas,* 36 Ark. 518. Even if the retention of the notes could be said to have constituted ratification of a verbal contract required by statute to be in writing, the contract would not be validated for its full term, but ratification would extend only to any period of actual performance under the contract. *Bald Knob Special School District* v. *McDonald,* 171 Ark. 72, 283 S.W. 22.

The statute requires that the written memorandum be signed by the party to be charged. *Elm Springs State Bank* v. *Bradley,* 179 Ark. 437, 16 S.W. 2d 585. The party to be charged is the one against whom the

contract is sought to be enforced in the action. *Lee v. Vaughan's Seed Store*, 101 Ark. 68, 141 S.W. 496, 37 L.R.A. (n.s.) 352; *Jones v. School District No. 48*, 137 Ark. 414, 208 S.W. 798; *Chicago Mill & Lbr. Co. v. Matthews*, 163 Ark. 571, 260 S.W. 963. The notes prepared by Hindsley could not constitute the writing required, not only because they were not signed by appellant, but also because the land involved is not in any way identified therein, as required by the statute. *McCorkle v. H. K. Cochran Co.*, 144 Ark. 269, 222 S.W. 34; *Faith v. Epperson*, 213 Ark. 1002, 214 S.W. 2d 223; *Hotopp v. Adair*, 144 Ark. 629, 223 S.W. 393; *Briggs v. Frazer*, 157 Ark. 518, 249 S.W. 9.

No specific mention was made of the statute of frauds until the conclusion of all the evidence. Then, appellant's attorney requested that the jury be instructed that appellee could not have a three-year lease on the property since it would be within the statute of frauds. He contended that, giving the evidence on behalf of appellee its strongest probative force, it only indicated that Mrs. Norton had orally consented to a three-year lease, and had not executed the notes presented as evidence of the rent contract.

This request was refused by the circuit judge, who stated that Mrs. Norton's acceptance of rent notes prepared according to her instructions would constitute a valid three-year lease. Appellant's attorney also objected to the giving of appellee's requested instruction No. 1 as to the words sufficient to constitute a lease for the reason that neither it, nor any other instruction, covered the statute of frauds. Objection was also made, for the same reason, to appellee's requested instruction No. 2 in which the circuit judge told the jury that acceptance of rent notes for 1967, 1968, and 1969 pursuant to an oral agreement between the parties would constitute a valid and binding lease contract for a three-year period. Appellant also requested an instruction stating the requirements of the statute of frauds, which

would not have permitted the jury to consider whether any lease was entered into except for the year 1967. This request was refused.

It was clearly error on the part of the trial judge to give appellee's requested instructions 1 and 2 over the objection of appellant. Neither of them would have allowed consideration of the application of the statute of frauds to the dealings between the parties. In effect, the trial court held that the actions of the parties took the matter out of the statute of frauds. This was error.

It is urged, however, that the statute of frauds cannot be relied on by appellant because of her failure to plead it. It is generally held that reliance upon the statute of frauds as an affirmative defense is conditioned upon assertion of the defense in a pleading. See *S. H. Kress Co.* v. *Moscowitz & Zucker,* 105 Ark. 638, 152 S.W. 298. This rule is apparently based on the theory that an oral contract raises a moral obligation, at least, so that a party against whom it is asserted has the option of either pleading the statute of frauds as a defense or waiving it. *Skinner* v. *Fisher,* 120 Ark. 91, 178 S.W 922. While this is a sound rule, there are situations to which it cannot and should not be strictly applied.

When an oral contract is pleaded by the adverse party or admitted by the pleader, the latter must specifically plead the statute of frauds in order to rely upon it. *Stooksberry* v. *Pigg,* 172 Ark. 763, 290 S.W. 355. It has often been held, however, that the denial of the existence of a contract asserted in a complaint is sufficient to raise the issue of the statute of frauds, even though the statute is not specifically mentioned. *Elm Springs State Bank* v. *Bradley,* 179 Ark. 437, 16 S.W. 2d 585. The denial in an answer is taken to be as broad as the allegation in the complaint. *McCorkle* v. *H. K. Cochran Co.,* 144 Ark. 269, 222 S.W. 34.

Denial of the existence of a contract requires the party asserting the contract to prove one valid under the statute of frauds. *Chicago Mill & Lbr. Co.* v. *Matthews,* 163 Ark. 571, 260 S.W. 963.

Under rules of both common law and code pleading, the assertion of a claim or defense based upon a contract within the statute of frauds which is not alleged to be in parol will be taken as against the pleader as the allegation of a written contract. *Duncan* v. *Clements,* 17 Ark. 279; *McDermott* v. *Cable,* 23 Ark. 200; *Allen* v. *Bank of Eureka Springs,* 179 Ark. 334, 15 S.W. 2d 408; *Elm Springs State Bank* v. *Bradley,* 179 Ark. 437, 16 S.W. 2d 585; *Gale* v. *Harp,* 64 Ark. 462, 43 S.W. 144. When issue is joined upon an allegation of a contract required by a statute to be in writing, proof of a written contract, or of a contract valid under the statute, is required. *Hurlburt* v. *W. & W. Mfg. Co.,* 38 Ark. 594; *Elm Springs State Bank* v. *Bradley,* supra; *Stooksberry* v. *Pigg,* 172 Ark. 763, 290 S.W. 355.

Under our system of code pleading, much of the volume of pleadings required under the rules of common law pleading was to have been eliminated. Although it may seem too restrictive at times such as this, our code permits a reply to an answer only when a counterclaim or set-off is asserted by a defendant. Ark. Stat. Ann. § 27-1131 (Repl. 1962). The code also provides that allegation of new matter in an answer not relating to a counterclaim or set-off is deemed to be controverted by the plaintiff as if he had made a direct denial or avoidance. Ark. Stat. Ann. § 27-1151 (Repl. 1962). These statutes have been applied, for example, to answers pleading contributory negligence (when it was a complete defense), releases, and ownership of a judgment by a defendant by right of subrogation. *St. Louis, Iron Mountain and Southern Railway* v. *Higgins,* 44 Ark. 293; *George* v. *St. Louis, Iron Mountain and Southern Railway,* 34 Ark. 613; *Ward* v. *Sturdivant,* 96 Ark. 434, 132 S.W. 204. In the first two cases cited, plaintiffs

have even been permitted to show their own infancy and incompetence to avoid written instruments signed by them and relied upon in answers without any suggestion of the matter shown in any pleading. This court said in the *Higgins* case that the cause is at issue without any reply and that the trial judges should not permit the record to be cluttered with such improper pleadings.

We are aware of two decisions in which the filing of a reply raising the statute of frauds has been mentioned. See *Dunn* v. *Turner Hardware Company,* 166 Ark. 520, 266 S.W. 954, and *Cook* v. *Cave,* 163 Ark. 407, 260 S.W. 49. In the former there was a counterclaim for special damages asserted in the answer. In the latter the pleading merely denied the existence of a contract but did not specifically assert the statute of frauds. In neither case was the necessity of the pleading to raise the issue considered, nor was the propriety of the filing of the reply questioned. No rule that a reply was required to assert the statute of frauds against a contract first asserted in an answer was stated in either opinion. The opinion in *Rogers* v. *Moss,* 216 Ark. 838, 227 S.W. 2d 630, did state that a plaintiff could not rely on the statute of frauds where it was not pleaded. In that opinion, however, the court had already stated that any rights under the contract in question had been surrendered long before the action was brought. Thus, the same result would have been reached without ever considering the application of the statute. No authority requiring a plaintiff to raise the statute by a reply was cited in the opinion. This decision, in this respect, stands alone. It is not in harmony with our statutes governing pleadings or with other decisions of this court, and we decline to follow it.

When appellee alleged a binding contract in his answer, the existence of this contract became an issue in the case, and it was incumbent upon him to produce evidence to prove the existence of such a contract, i.e., one

in writing or which was taken out of the application of the statute of frauds. This, he failed to do.

Appellant also complains of the failure of the trial court to instruct the jury on the right of appellant to recover double damages provided for by Ark. Stat. Ann. § 50-509 (1947), as requested. We find that this also was error. A jury might have found that the penal statute did not apply in this case if it found that there was a valid oral contract for the year 1967 as permitted under appellant's requested instruction No. 2 [See Ark. Stat. Ann. § 38-104 (Repl. 1962); *Brockway* v. *Thomas,* 36 Ark. 518] or if it found that appellee did not hold over willfully but under a belief in good faith that he had a right to do so (See *Johnson* v. *Taylor,* 220 Ark. 46, 246 S.W. 2d 121). The evidence was sufficient, however, to make a question for the jury's determination on this issue.

The judgment is reversed and the cause remanded for a new trial.

HOLT, J., not participating.

The Chief Justice dissents.